OPINION
 

 JOHN S. ANDERSON, Justice.
 

 Appellant, Banner Life Insurance Company, filed suit against its agent, appellee Jesse Pacheco, alleging claims for breach of contract, breach of fiduciary duty, and negligence related to the agent’s sale of a life insurance policy. After a jury trial, the trial court entered a take-nothing judgment in favor of the agent. Appellant raises two issues on appeal, challenging (1) the legal and factual sufficiency of the evidence to support the jury’s findings on breach of contract, breach of fiduciary duty, and negligence, and (2) the trial court’s rulings on appellant’s motions for judgment notwithstanding the verdict and motion for new trial. We affirm the judgment of the trial court.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In August 1999, appellee Jesse Pacheco, an insurance agent for appellant Banner Life Insurance Company, approached Linda Cherry concerning the purchase of a life insurance policy. Linda’s husband, Thomas E. Cherry (“Cherry”), filled out an application for life insurance on his life. Cherry submitted the application to Banner, through its agent Pacheco, on November 12, 1999. The policy was in the amount of $500,000.
 

 Cherry was required to have a medical exam as part of the application for life insurance. At the time, Cherry was fifty-five years old and an avid runner. He was examined by a medical examiner on November 24, 1999. Banner subsequently approved Cherry’s application, and, on December 21, 1999, Pacheco delivered the policy to Cherry’s wife.
 

 On January 7, 2000, Cherry saw a doctor for treatment of what he thought was a boil located on his scalp behind his ear. During the exam, Cherry told the doctor that the “boil” had been on his head for the past one-and-a-half months, and that although he had attempted to treat it at home with over-the-counter medications, it had not gone away. Cherry was referred to another doctor who surgically removed the growth at the end of January 2000. Tests performed on the growth revealed it was cancerous. Cherry learned that the cancer was in stage four and had spread from his kidneys to his lungs to his head. Cherry passed away in December 2000.
 

 Upon Cherry’s death, his wife made a claim for benefits under the Banner life insurance policy. Because Cherry’s death was within the two-year period of contesta-bility, Banner investigated the cause and circumstances of his death. In its investigation, Banner discovered Pacheco had delivered the policy to Mrs. Cherry without
 
 *811
 
 inquiring with respect to the health of Cherry at the time of delivery. Banner determined that it did not have enough evidence to deny the claim, without a risk of litigation and exposure to extra-contractual damages, so Banner paid Mrs. Cherry $509,206 pursuant to the policy, including interest.
 

 Banner filed suit against Pacheco seeking to recover from Pacheco individually the $509,206 amount that Banner paid to Mrs. Cherry under the policy. Banner sued Pacheco for breach of contract, breach of fiduciary duty, negligent misrepresentation, and negligence. Banner’s claims stem from alleged violations of (1) the terms of the agent/broker agreement between Banner and Pacheco, and (2) the terms of Cherry’s application for insurance which Pacheco also signed. Banner claims Pacheco violated the terms of the agent/broker agreement and the insurance application by (1) not hand-delivering the life insurance policy to Cherry personally, and (2) not inquiring of Cherry at the time of delivery whether there were any changes in his health.
 

 The case was tried to a jury, and the jury returned a verdict in favor of Pacheco. The trial court entered a take-nothing judgment in favor of Pacheco.
 

 DISCUSSION
 

 Appellant raises two issues on appeal: (1) whether the evidence supports the jury’s answers to the breach of contract, breach of fiduciary duty, and negligence questions; and (2) whether the trial court should have granted judgment notwithstanding the verdict or granted appellant’s motion for new trial, instead of entering judgment on the verdict.
 
 [1]
 
 Because both of these issues are nearly identical in challenging the legal and factual sufficiency of the evidence to support the jury’s verdict, we will address them together.
 

 I. Legal and Factual Sufficiency Standards of Review
 

 When a party challenges the legal sufficiency of the evidence supporting an adverse finding to a question on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue.
 
 Dow Chem. Co. v. Francis,
 
 46 S.W.3d 237, 241 (Tex.2001) (per curiam). In making this determination, we examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, we will then examine the entire record to determine if the contrary position is established as a matter of law. We will sustain the challenge only if the contrary proposition is conclusively established.
 
 Id.
 

 When a party challenges the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, the party “must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.”
 
 Francis,
 
 46 S.W.3d at 242. In conducting a factual sufficiency review, we consider and weigh all of the evidence in the record, both supporting and contrary to the judgment, and can set aside the verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.
 
 Id.
 

 II. The Evidence
 

 During trial, the jury heard testimony from several witnesses: (1) Pacheco; (2) William G. Fuchs, the Banner claims analyst who investigated Mrs. Cherry’s claim
 
 *812
 
 for policy benefits; (3) Peter Marules, Banner’s insurance expert; (4) Gary Beck, Pacheco’s insurance expert; and (5) Mrs. Cherry. The following is a brief summary of the testimony of each of these witnesses.
 

 Pacheco testified he had been an insurance agent for Banner since April of 1999. He approached Mrs. Cherry about purchasing life insurance. He stated Mr. Cherry bought the insurance to provide for the education of his three daughters and for debts in case something should happen to him. As part of the application for life insurance, Cherry underwent a medical exam that was conducted by a medical examiner, and the medical exam was conducted without Pacheco’s involvement. The results of the medical exam were sent directly to Banner, who, after reviewing the application and exam, approved Cherry’s application. On December 21, 1999, Pacheco delivered the life insurance policy to Mrs. Cherry.
 

 Pacheco testified as to his understanding of the provisions in his agent/broker agreement with Banner and Cherry’s insurance application addressing the delivery of policies and changes in health of the insured between the time of application and delivery of the policy. He testified concerning paragraph ten of the agent/broker agreement that addresses the delivery of policies as follows:
 

 10. DELIVERY OF POLICIES
 

 No policy shall be delivered unless at the time of delivery the applicant is in the state of health and insurability represented in Parts I and II of the application and any supplements thereto, the first premium has been fully paid, and delivery has been made within sixty (60) days from the issue date of that policy. The Agent/Broker shall return to the Company, on the day following the expiration of the sixty (60) days, any policy not so delivered, unless a specific extension of the delivery period has been authorized. If the applicant is not in the state of health and insurability represented in the application when delivery is attempted, the policy shall not be delivered, but shall immediately be returned to the Company with a full written explanation.
 

 The agenVbroker agreement was admitted into evidence during trial. According to Pacheco, paragraph ten of the agent/broker agreement did not require personal delivery of the policy to the insured or that questions be asked in person concerning the insureds health. Pacheco stated that he would not have been able to see the “boil” if he had seen Cherry in person, and that if he had asked Cherry at the time of delivery whether there was any change in health, he thinks Cherry would have said no, but that this was speculation. Pacheco further testified that if upon delivery of the policy there was a change in health, the company would not have wanted him to deliver the policy.
 

 Pacheco was questioned concerning various provisions in Cherry’s life insurance application, which Cherry and Pacheco both signed, and the representations Pacheco made in the application concerning Cherry’s health. Cherry’s life insurance application was also admitted into evidence. Pacheco testified he did not learn that Cherry had cancer until February of 2000. In 2001, Banner terminated its agent/broker agreement with Pacheco, giving the reason that Pacheco did not comply with paragraph ten of the agent/broker agreement.
 

 Next, William G. Fuchs, the Banner claims analyst who investigated Mrs. Cherry’s claim for benefits under the life insurance policy, testified regarding his investigation of Mrs. Cherry’s claim. During his investigation, Fuchs spoke with Pacheco, and he learned Pacheco delivered
 
 *813
 
 the policy to Cherry’s wife on December 21, 1999 and did not inquire about Cherry’s health at the time of delivery. Fuchs testified concerning his review of Cherry’s medical records which revealed Cherry first noticed the “boil” behind his right ear one-and-a-half months prior to his January 7, 2000 doctor appointment and had been treating the “boil” with over-the-counter medications. Fuchs acknowledged Cherry was not diagnosed with cancer until January 25, 2000.
 

 According to Fuchs, if Pacheco had asked Cherry whether there had been any change in his health and Cherry said “no,” Banner would have had a basis to rescind the life insurance policy. Fuchs testified that if Banner had been told of the growth behind Cherry’s ear, Banner would not have issued the policy until a diagnosis had been made. Banner’s position was that the “boil” was a change in health and that this change in health should have been reported. He explained the company wants to know any time there is a change in health so that a proper review can be made of the condition.
 

 Fuchs acknowledged Banner drafted the agent/broker agreement and the application for insurance. He also testified that Cherry, as the applicant, had an independent duty under the insurance application to notify Banner of any changes in health.
 

 The next witness to testify was Banner’s insurance expert, Peter Marules. Marules testified that based upon his review of the agent/broker agreement, insurance application, and other documents in the case, Pacheco did not adhere to the delivery requirements in his agreement with Banner, and he was negligent. Marules testified Pacheco had a duty to inquire of Cherry’s health prior to delivery of the policy and Pacheco did not comply with that obligation. Upon being questioned whether the agent/broker agreement requires that delivery be in person or that Cherry be asked about his health in person, he said there are no such requirements. In his opinion, there are two separate obligations in the agent/broker agreement and the insurance application — one on the prospective insured to tell and one on the insurance agent to ask. According to Marules, Cherry was obligated to advise Banner of any change in his health between the time of application and delivery of the policy, and if he did not so advise, that would be grounds for Banner to void the policy.
 

 Marules testified he did not see evidence in the records that anyone thought the “boil” might be cancerous prior to the actual surgery at the end of January 2000. He confirmed that the records from Cherry’s November 24, 1999 medical exam did not contain any notation concerning a “boil.”
 
 [2]
 
 Marules’ opinion was that a “boil” is a change in health and should be reported by the insured.
 

 After Marules’ testimony, the jury heard from Pacheco’s insurance expert, Gary Beck, who disagreed with Marules’ conclusions. He saw nothing in the application requiring delivery of the policy in person or requiring the agent to ask in person if there had been a change in health. Beck testified paragraph ten of the agent/broker agreement does not specify personal delivery by the agent and only says “delivery.” He also stated paragraph ten does not require an agent to ask the insured in person if there has been a change in health since the time of application.
 

 Beck testified that some life insurance companies require a delivery receipt and
 
 *814
 
 that Banner could have specified that in its agent/broker agreement with Pacheco. Beck explained that an insurance company wants to know if there is a change in health because of the delay that often occurs in underwriting a life insurance policy. In his opinion, however, the insurance company only wants to know of material changes to the insured’s health — something life-threatening or that is going to cause life expectancy to be shortened. He does not believe a boil, headache, stomachache, or cold is such a change in health. Beck admitted the application does not specify that only “material” changes in health be reported, but he believes that is the reasonable interpretation.
 

 With regard to an agent’s inquiry of the insured’s health, he testified that making an inquiry can be something as simple as just looking at someone. Beck further testified Cherry had an obligation under the insurance policy application to notify Banner of any change in his health and that if Banner believed a boil was a change in health, the policy could be voided based on a material misrepresentation.
 

 Mrs. Cherry was the last witness to testify. She stated her husband was healthy in November and December of 1999 and was training to run the New York City Marathon. She first learned of the growth behind Cherry’s ear after Christmas, and she thought it was a boil. She bought over-the-counter medications to treat it, but these medications did not work. At that point in time, she and her husband did not see the “boil” as “a big deal,” but Cherry went to the doctor because the “boil” sometimes bled in his hair. On January 7, 2000, Cherry’s dermatologist referred him to a surgeon, and the surgeon removed the growth at the end of January 2000. The growth was tested, and it was determined to be cancerous.
 

 Mrs. Cherry testified her husband had not seen any other doctors prior to the January 7, 2000 appointment and it had been more than five years since he had a physical exam. Cherry passed away December 29, 2000.
 

 III. Breach of Contract
 

 Banner contends the jury’s determination that Pacheco did not breach the contract is contrary to the great weight and preponderance of the evidence, clearly wrong, and manifestly unjust because the evidence shows Pacheco breached both the insurance application and the agency agreement by not delivering the policy to Cherry and by not inquiring of anyone as to whether Cherry’s health remained in the same condition as on the date he applied for the policy. Banner claims that “Pacheco’s contract required him to physically deliver the policy to Mr. Cherry, but not to do so if Cherry was not in the same state of health and insurability as when he applied for insurance.” Banner cites paragraphs one and six of the agent/broker agreement in which Pacheco agreed (1) to comply with all underwriting guidelines, rules, and regulations of Banner, and (2) to not waive, discharge, or change any term or condition in any policy, agreement, or approved form. Banner further asserts that “[t]he agency agreement is to be read with the provisions of the insurance application.”
 

 Paragraph ten of the agent/broker agreement specifically addresses delivery of policies as follows:
 

 10. DELIVERY OF POLICIES
 

 No policy shall be delivered unless at the time of delivery the applicant is in the state of health and insurability represented in Parts I and II of the application .... If the applicant is not in the state of health and insurability represented in the application when delivery is attempted, the policy shall not be delivered, but shall immediately be returned to the Company with a full written explanation.
 

 
 *815
 
 The insurance application also contains a provision regarding delivery of the policy:
 

 Except as may be provided in a duly issued Conditional Receipt, no insurance shall take effect unless and until the policy has been physically delivered and the first full premium paid during the lifetime of the insured(s) and then only if the person(s) to be insured is (are) actually in the state of health and insurability represented in Parts I and II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued.
 

 We note the plain language of both the agent/broker agreement and the insurance application does not require that the agent personally deliver the policy to the insured or that the agent inquire of the insured’s health.
 
 [3]
 

 Banner and Pacheco’s insurance experts both testified regarding what the agent/broker agreement and the application required, and both documents were admitted into evidence. Beck, Pacheco’s expert, testified that nothing in the agent/broker agreement or application required the agent to deliver the policy in person or to ask Cherry if there had been a change in health. Beck further testified some insurance companies require delivery to person and ask for a delivery receipt and that Banner could have required in person delivery or a delivery receipt in the agreement, but it did not.
 
 [4]
 
 He also testified that an agent asking the insured whether there has been any change in health between the time of application and the time of delivery is not, in his opinion, industry standard. Beck also stated that Cherry had an obligation under the insurance application to notify Banner of any changes to answers given in the application before accepting delivery of the policy.
 

 Marules, Banner’s expert, testified that in his opinion Pacheco did not adhere to the delivery requirements to his contract with Banner. However, upon being asked whether the agent/broker agreement requires in-person delivery and/or that an insured be asked about his health to person, Marules admitted there are no such requirements. Marules also agreed with Beck that Cherry had obligations under the policy to advise Banner of any change in health.
 

 The jury as trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to them testimony.
 
 Mayes v. Stewart,
 
 11 S.W.3d 440, 451 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Because we are not the fact finder, we may not substitute our own
 
 *816
 
 judgment for that of the trier of fact, even if we would reach a different answer on the evidence. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment.
 
 Id.
 

 Upon being asked whether Pacheco failed to comply with his agreement with Banner, the jury answered, “No.” Based upon our review of the evidence, we conclude the evidence is both legally and factually sufficient to support the jury’s finding of no breach of contract. We overrule appellant’s issues as to the breach of contract claim.
 
 [5]
 

 IV. Breach of Fiduciary Duty
 
 [6]
 

 Banner claims the jury’s determination that Pacheco did not breach his fiduciary duty to Banner is contrary to the great weight and preponderance of the evidence, clearly wrong, and manifestly unjust. Banner argues Pacheco clearly had a duty to protect Banner’s interest and that this duty included making sure that he did not obligate Banner on a policy in which the applicant, at the time of delivery of the policy, was not in the same state of health and insurability as when the application was completed. Banner asserts that because Pacheco did not inquire about Cherry’s health, “Banner was left with no reasonable alternative but to pay the benefit as a result of Pacheco not observing his duty to Banner.”
 

 Pacheco responds that the only duty placed on Pacheco by the application was to inform Banner of any health problem that Pacheco knew or learned about and that Pacheco did not have a duty to conduct an independent investigation of Cherry’s health before he delivered the Banner policy. In support, Pacheco references the testimony of both parties insurance experts who acknowledged Banner could have attempted to void the policy based upon Cherry’s alleged failure to advise Banner of the presence of the “boil,” regardless of what Pacheco did or did not do, and Banner chose not to bring a claim to rescind the insurance policy.
 
 [7]
 
 Additionally, Pacheco asserts on appeal that “[tjhere is no evidence in this record that Pacheco had knowledge that Thomas Cherry was a poor insurance risk, in fact, all evidence available pointed to Thomas Cherry being in excellent health.”
 

 The following instruction on fiduciary duty
 
 [8]
 
 was submitted to the jury:
 

 
 *817
 
 An insurance agent has a fiduciary relationship to an insurance company. This means that the agent owes the insurance company a duty of good faith, reasonable care and skill in performing the agents duties. The agent is responsible for any loss the insurance company sustains as a result of the violation of this duty.
 

 The jury found that Pacheco did not fail to comply with his fiduciary duty to Banner.
 

 We review the sufficiency of the evidence to support the jury’s finding of no breach of fiduciary duty. The evidence undisputably shows that Cherry was not diagnosed with cancer until the end of January 2000, and Pacheco did not know that Cherry had cancer until February 2000. Banner does not cite any authority that requires an insurance agent to make an independent inquiry as to an insureds health at the time of delivery of a life insurance policy. Moreover, the evidence shows Cherry and his wife did not believe the “boil” was anything serious, and Cherry did not learn the gravity of his health condition until the end of January 2000.
 

 We have held Pacheco was not required by contract to deliver the insurance policy in person to Cherry, the insured, or to inquire at the time of such delivery as to any changes in the insured’s health. Nevertheless, counsel for Banner urges this court to hold Pacheco violated his duty to determine any changes in Cherry’s health and to report same to Banner. While we agree an agent has a fiduciary duty of good faith and fair dealing to his principal, here, Pacheco simply did not know, and had no duty to determine, Cherry’s health status at the time the policy was delivered. We decline to hold an agent breaches a duty to his principal by failing to report information of which the agent has no knowledge.
 

 Based upon our review of the evidence, we conclude the evidence is legally and factually sufficient to support the jury’s finding Pacheco did not breach his fiduciary duty to Banner. We overrule appellant’s issues with regard to the breach of fiduciary duty claim.
 

 V. Negligence
 

 Banner argues the jury’s finding that Pacheco was not negligent is contrary to the great weight and preponderance of the evidence, clearly wrong, and manifestly unjust. Specifically, Banner contends Pacheco had an obligation “at the very least” to view Cherry prior to delivery of the policy to satisfy himself that Cherry was in the same state of health and insurability as when the application was completed. Banner claims the evidence shows Pacheco did not see Cherry and, thus, Pacheco did not exercise the level of care that a reasonable insurance agent would have exercised under the same conditions.
 

 Banner does not cite any legal authority in support of its arguments that Pacheco had a duty “to view” Cherry prior to delivery of the policy. In fact, no authority is cited in the section of Banners brief challenging the legal and factual sufficiency of the jury’s finding on negligence. Banner has not adequately briefed this issue for appellate review and has waived this claim on appeal.
 
 See
 
 TEX.R.APP. P. 38.1(h). Moreover, the evidence showed Cherry was in good health according to all known information at the time of delivery of the policy. Even if we assume without deciding that Pacheco had a duty “to view” Cherry at the time of policy delivery, the
 
 *818
 
 evidence at trial revealed that “viewing” Cherry would not necessarily have disclosed the presence of the lesion on his scalp. In addition, there was expert testimony that Banner could have voided the life insurance policy based upon Cherry’s own failure to advise Banner of the lesion on his scalp.
 

 Upon being asked whether the negligence, if any, of Pacheco proximately caused injury to Banner, the jury answered, “No.” We conclude the jury’s finding is supported by legally and factually sufficient evidence, and we overrule appellants issues with respect to Banner’s negligence claim.
 

 VI. Motions
 

 In issue two, appellant complains of the trial court’s rulings on its motion for new trial and motion for judgment notwithstanding the verdict. These motions attack the legal and factual sufficiency of the evidence to support the jury’s verdict. Because we hold the jury’s findings are supported by legally and factually sufficient evidence, we hold the trial court did not err in overruling these motions.
 
 See Hester v. Friedkin Cos.,
 
 132 S.W.3d 100, 105 (Tex.App.-Houston [14th Dist.] 2004, pet. denied);
 
 Mandell v. Hamman Oil & Ref. Co.,
 
 822 S.W.2d 153, 158 (Tex.App.-Houston [1st Dist.] 1991, writ denied).
 

 CONCLUSION
 

 We overrule appellant’s two issues and affirm the judgment of the trial court.
 

 [1]
 

 . Appellant’s motion for judgment notwithstanding the verdict attacks the legal sufficiency of the evidence to support the jury’s findings, and its motion for new trial attacks the factual sufficiency of the evidence to support the jury’s findings.
 

 [2]
 

 . Someone lined out the section of the medical examiner’s report (part three of the insurance application) inquiring whether “[o]n examination is there any abnormality of the following: ... [s]kin (include scars), lymph nodes, veins or peripheral arteries?,” and the "yes" or "no” boxes are blank.
 

 [3]
 

 . The primary concern of a court when interpreting an insurance contract is to ascertain the true intent of the parties as expressed in the instrument, by giving terms their plain, ordinary, and generally accepted meaning.
 
 Kelley-Coppedge, Inc. v. Highlands Ins. Co.,
 
 980 S.W.2d 462, 464 (Tex.1998). No issue was raised at trial or on appeal asserting an ambiguity in either the insurance application or the agent/broker agreement. Parol evidence is not admissible for the purpose of creating an ambiguity.
 
 See id.
 
 However, neither party objected to the admission of parol evidence in this case.
 

 [4]
 

 . In
 
 Mayes v. Massachusetts Mut. Life Ins. Co.,
 
 608 S.W.2d 612, 616 (Tex. 1980), the Texas Supreme Court, upon analyzing whether the requirement that the answers in an insurance application be true and correct at the time of delivery of the policy should be considered a representation or a condition precedent, reasoned:
 

 [T]he insurer knows the length of delay between the completion of the application and the issuance of the policy. If this period was significant, the insurer could easily ensure that the answers were still correct at the time of issuance of the policy either by putting a good health provision in the application or by requiring a supplemental statement of health.
 

 Id.
 

 [5]
 

 . The jury question uses the term "agreement." It is not clear whether that term refers to the agent/broker agreement and/or the insurance application and agreement. Because Banner’s brief on this issue suggests the two agreements are to be read together, jury question three must be construed as a finding Pacheco did not breach either agreement.
 

 [6]
 

 . The charge submitted to the jury for breach of fiduciary duty was based on Maryland law. A specific provision in the agent/broker agreement provides that "[t]he laws of the State of Maryland shall govern all matters concerning the validity, performance and interpretation of this Agreement.” At trial, Pacheco objected to the trial court’s submission of fiduciary duty under Maryland law, and the trial court overruled his objection. On appeal, Pacheco does not complain of the trial court's submission of the fiduciary duty issue under Maryland law.
 

 [7]
 

 . To avoid liability under a life insurance policy on the basis of a misrepresentation by the insured, an insurer must plead and prove five elements: (1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making same; and (5) the materiality of the representation.
 
 Mayes,
 
 608 S.W.2d at 616;
 
 Flowers v. United Ins. Co. of Am.,
 
 807 S.W.2d 783, 785 (Tex.App.-Houston [14th Dist.] 1991, no writ).
 

 [8]
 

 . In Texas, as in Maryland, an insurance agent owes his principal, the insurer, a fiduciary duty of good faith and fair dealing in all
 
 *817
 
 transactions on the insurer's behalf.
 
 See American Indem. Co. v. Baumgart,
 
 840 S.W.2d 634, 639 (Tex.App.-Corpus Christi 1992, no writ). Additionally, an insurance agent owes the insurer strict integrity, fair and honest dealing, and the duty not to conceal matters which might influence his actions to the insurers prejudice.
 
 See id.