Affirmed and Memorandum Opinion filed February 28, 2006









Affirmed
and Memorandum Opinion filed February 28, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00631-CV

____________

 

LUMBERMENS MUTUAL
CASUALTY COMPANY, Appellant

 

V.

 

BRENDA GREEN, Appellee

 



 

On Appeal from the 164th
District Court 

Harris County, Texas

Trial Court Cause No. 2001-24848

 



 

M E M O R A N D U M   O P I N I O N








In this worker=s compensation
case, appellant Lumbermens Mutual Casualty Company (ALumbermens@) appeals the
judgment of the trial court, which affirmed the jury=s award of death
benefits to appellee Brenda Green, the decedent=s widow.[1]  In two points of error, appellant contends
that the evidence is legally and factually insufficient to support the trial
court=s judgment.  We affirm.

Background

On April 11, 2000, decedent Robert Green
was employed by Cargo Airport Services (ACargo@) as a cargo
traffic agent.  Trial testimony suggested
that Green worked primarily in Cargo=s warehouse, which
stored inbound and outbound freight. 
According to Green=s longtime friend and co-worker Jorge
Gorjon, Gorjon and Green were usually the first two employees to arrive for the
morning shift.

Gorjon testified that his morning routine
involved filling out paperwork in his office, which opened directly into the
warehouse.  According to Gorjon, Green
typically waited for Gorjon to finish his paperwork, and then the two of them
would walk from Gorjon=s office into the warehouse.  A second small office, which contained a
telephone, a desk, and a computer, was located inside the warehouse. 

Gorjon testified that when he and Green
entered the warehouse on the morning of April 11, 2000, they noticed that
someone had turned off the light in the small office. According to Gorjon, this
was unusual because the light in that office normally stayed on overnight.  Gorjon testified that both he and Green
walked toward the office to investigate; however, Green reached the office
first because Gorjon paused to deposit some dirty uniforms in a nearby laundry
bin.

Gorjon testified that as Green reached for
the doorknob, a hand brandishing a gun emerged from beneath the knob.  Gorjon testified that a man walked out of the
office and pointed the gun at Green=s chest; Gorjon did
not recognize the man because his body was completely covered with clothing,
including a ski mask and gloves. 
According to Gorjon, Green began walking backwards while the man
continued to point the gun at him.  Green
then told Gorjon to run and call the police. 









Gorjon testified that he was running back
to his office when he heard a gunshot. 
Startled, Gorjon fell and lay on the floor for about a minute.[2]  Gorjon testified that he tried to hide
because he feared that the assailant would chase him; however, the attacker did
not pursue Gorjon.  Gorjon called 911 and
eventually ran to the warehouse next door; he did not see the attacker again.

Gorjon testified that Green was very
friendly and well-liked, and that he had many friends.  Gorjon also stated that he was unaware of any
employees who had harbored ill feelings toward Green.  Finally, Gorjon  testified that he did not know where Green
kept his money and that he had never seen Green=s money clip
during the years they had worked together. 

Louis Cavelli, Cargo=s operations
manager, testified that Cargo shipped many different types of items, some of
which were expensive.  Cavelli also
testified that some of the warehouse doors did not have locks.  However, Cavelli testified that a robbery had
never occurred at the warehouse before, and he stated that he was unaware of
any cargo reported missing after Green=s murder.  Cavelli testified that he had known Green for
many years and knew that Green carried a money clip.  Cavelli opined that it was probably common
knowledge that Green carried large sums of money on his person, but he was
unaware of anyone who harbored a vendetta against Green.








Investigating officer Sergeant Jerry Novak
of the Houston Police Department testified by deposition.  Novak testified that Green had died from a
bullet wound to the head; when he examined Green=s body, Novak
noticed that Green=s front pants pockets were inside-out but
his wallet remained undisturbed. 
According to Novak, police recovered Green=s empty money clip
just outside the warehouse.  Officers
also discovered various articles of clothing, including a ski mask, gloves, and
a sweatshirt or windbreaker.  Novak also
testified that while they did not discover any signs of a break-in, officers
learned that one of the warehouse=s bay doors had
been left partially open overnight.  

Novak believed that Green had been the
target of the robbery because many people knew that he carried large amounts of
cash in his money clip.  According to
Novak, the discovery of the empty money clip and intact wallet and the
assailant=s failure to pursue Gorjon supported this
theory.  Novak also opined that the
assailant, who remained unidentified at the time of trial, must have been
familiar with the warehouse and with Green=s and Gorjon=s morning
routine.  Novak acknowledged that
numerous valuable items were stored in the warehouse; however, he asserted that
the assailant=s desire to steal Green=s money clip was
the only possible explanation for the attack.

At the close of the evidence, the sole
question presented to the jury was: ADid Robert Green receive
his fatal injury in the course and scope of his employment on or about April
11th of 2000?@ 
The trial court instructed the jury that A>course and scope
of employment= means activity having to do with and
originating in the work, business, trade, or profession of the employer
performed by an employee while engaged in or about the furtherance of the affairs
or business of his employer, whether upon the employer=s premises or
elsewhere.=@  The court also instructed the jury that Aan injury is not
in the course and scope of employment if it is caused by the act of another
person intended to injure the employee because of reasons personal to the
employee and not directed against him as an employee or because of his
employment.@ 
Finally, the trial court informed the jury that the Texas Workers= Compensation
Commission Appeals Panel had found that Green=s death Awas the result of
a compensable injury sustained in the course and scope of his employment.@

The jury found that Green received his
fatal injury in the course and scope of his employment, and the trial court
entered judgment accordingly.  On appeal,
Lumbermens  asserts that (1) Green=s death was not
compensable as a matter of law; and (2) the greater weight of the evidence
supports a finding that Green=s death was not
compensable.








Standards of Review 

At trial, as the party appealing a
decision of the appeals panel regarding compensability or death benefits,
Lumbermens had to prove by a preponderance of the evidence that Green=s death was not
compensable.  Tex. Lab. Code Ann. ' 410.301 (Vernon
1996); ' 410.303 (Vernon
2005); Fin. Ins. Co. v. Ragsdale, 166 S.W.3d 922, 928 (Tex. App.CEl Paso 2005, no
pet.).  Now, as the party attacking the
legal sufficiency of the jury=s adverse finding,
Lumbermens must demonstrate that the evidence establishes as a matter of law
all vital facts in support of the compensability issue, namely that a third
party attacked Green for reasons unrelated to Green=s employment.  See Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001). 

 In
a legal sufficiency challenge, the reviewing court must first examine the
record for evidence that supports the finding, while ignoring all evidence to
the contrary.  Id.  A jury=s finding will be
upheld if more than a scintilla of evidence supports it.  Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995).  More than a
scintilla of evidence exists where the evidence supporting the finding, as a
whole, rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.  Id.  If there is no evidence to support the jury=s finding, the
reviewing court will then examine the entire record to determine if the
contrary proposition is established as a matter of law.  Francis, 46 S.W.3d at 241.  The point of error should be sustained only
if the contrary position is conclusively established.  Id.








Additionally, as the party attacking the
factual sufficiency of the jury=s adverse finding,
Lumbermens must demonstrate that the adverse finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and
unjust.  Id. at 242.  The court of appeals must consider and weigh
all of the evidence, and it can set aside a verdict only if the evidence is so
weak or if the finding is so against the great weight and preponderance of the
evidence that it is clearly wrong and unjust. 
Id.  If the court of
appeals sets aside a verdict, it must detail the relevant evidence and Astate in what
regard the contrary evidence greatly outweighs the evidence in support of the
verdict.@  Id. (quoting Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986)).  The
jury as trier of fact is the sole judge of the credibility of the witnesses and
the weight to be given to their testimony. 
Banner Life Ins. Co. v. Pacheco, 154 S.W.3d 822, 829 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Because the
reviewing court is not the fact finder, it may not substitute its own judgment
for that of the trier of fact.  Id.

ACourse and Scope
of Employment@ and the Personal
Animosity Exception

The Texas Workers= Compensation Act
(ATWCA@) provides the
exclusive remedy for an employee=s injury sustained
in the course and scope of employment.  Tex. Lab. Code Ann. ' 406.034(a)
(Vernon 1996); Walls Reg=l. Hosp. v. Bomar, 9 S.W.3d 805,
806 (Tex. 1999).  An injury is sustained
in the course and scope of employment if it is of the kind or character that
has to do with and originates in the work, business, trade, or profession of
the employer and occurs while the employee is engaged in or about the
furtherance of the affairs or business of the employer.  Tex.
Lab. Code Ann. ' 401.011 (Vernon Supp. 2005); Texas
Workers= Comp. Ins. Fund v. Rodriguez, 953 S.W.2d 765,
768 (Tex. 1997).

However, an injury is not compensable
under the TWCA if it Aarose out of an act of a third person
intended to injure the employee because of a personal reason and not directed
at the employee as an employee or because of the employment.@  Tex.
Lab. Code Ann. ' 406.032 (Vernon Supp. 2005); Bomar,
9 S.W.3d at 806.  Known as the Apersonal animosity
exception,@ this provision bars compensation for
those injuries Aresulting from a dispute which has been
transported into the place of employment from the injured employee=s private or
domestic life, at least where the animosity is not exacerbated by the
employment.@  Nasser
v. Sec. Ins. Co., 724 S.W.2d 17, 19 (Tex. 1987).  However, A[w]henever
conditions attached to the place of employment or otherwise incident to the
employment Aare factors in the catastrophic
combination, the consequent injury arises out of the employment@ and compensation
is not barred.  Id.








In Nasser, a jury awarded benefits
to a restaurant manager who was stabbed by a customer=s
ex-boyfriend.  Id. at 17.  Evidence showed that Marianne Dawes dined
frequently at a restaurant where Nasser was the manager, and that Nasser would
talk with her while she ate.  Id.
at 18.  At some point, Dawes= ex-boyfriend,
Victor Daryoush, saw Nasser sitting with Dawes and became jealous.  Id. 
One day, Daryoush entered the restaurant, ordered a Coke, and left;
Daryoush returned a short time later to confront Nasser, but Nasser told him
that he was busy.  Id.  Later that day, while Nasser was in his
office, an employee informed him that someone wished to speak with him.  Id. 
As soon as Nasser left his office, Daryoush attacked him.  Id. 

 Reasoning that Nasser=s case fell within
the personal animosity exception, this court reversed and rendered a
take-nothing judgment against Nasser. Id. at 17.  However, the Supreme Court of Texas reversed
and remanded, holding that we had applied the legal sufficiency standard
incorrectly and that there was some evidence to support the jury=s finding that
Nasser was injured in the course of his employment.  Id. at 18-19.  The supreme court reasoned that Nasser was
entitled to benefits because his managerial duties included interacting with
customers and keeping them satisfied.  Id.  Therefore, some evidence existed that Nasser
was acting in the course and scope of his employment when he ate with Dawes and
when he left his office to meet unwittingly with Daryoush.  Id. 
Furthermore, the supreme court reasoned that the personal animosity
exception did not apply because Athe dispute, if
any, between Nasser and Daryoush was not one that was transported from Nasser=s private life
into the workplace.  The dispute, if any,
arose in the workplace or was exacerbated by, or in the very least, was
incidental to, a duty of Nasser=s employment.@  Id. 








On remand, we found the evidence to be
factually sufficient to support the award of benefits.  Sec. Ins. Co. v. Nasser, 755 S.W.2d
186, 192 (Tex. App.CHouston [14th Dist.] 1988, no pet.).  Noting that the supreme court had Anarrowed
considerably the applicability of the personal animosity exception in cases
involving intentional assault,@ we rejected the
argument that the relevant inquiry should be the motivation of the attacker.[3]  Id. 
Instead, we explained that Aif there is a real
employment-related causative factor, the injury is within the course of
employment notwithstanding that there may be some personal motivation for the
third-party assault.@  Id.

Legal and Factual Sufficiency
Analysis

As in Nasser, the primary issue in
this case is whether Green=s death occurred
while he was in the course and scope of his employment or whether the personal
animosity exception bars his recovery. 
Having examined only the evidence supporting the judgment in favor of
appellee, we hold that the evidence is legally sufficient because there is more
than a scintilla of evidence to support the jury=s finding that
Green=s death occurred
in the course and scope of his employment, and the personal animosity exception
does not apply.

The morning of the attack, Green arrived
to work his usual shift.  Gorjon=s testimony
revealed that Green worked in the warehouse area where the company stored
valuable cargo. Gorjon also testified that the light in the warehouse office
was usually left on overnight, but he and Green noticed that the office was
dark.  Apparently both men found this to
be odd because they approached the office to determine why the light had not
been left on overnight.  Although
Lumbermens argues that there is no evidence that Green=s job required him
to investigate or that his duties placed him in a position of harm, the jury
could reasonably infer from Gorjon=s testimony that
Green was suspicious and wished to investigate because he worked in the
warehouse and knew that valuable goods were stored there.   See Walters v. Am. States Ins. Co.,
654 S.W.2d 423, 426 (Tex. 1983) (stating that the jury is entitled to make
inferences if they are reasonable and based on the facts proved).

Additionally, because the personal
animosity exception does not apply, it does not remove Green=s injury from the
course and scope of his employment.  The
personal animosity exception does not apply because there is no evidence that
Green=s death was the
result of a personal disagreement that was transported into the workplace.  








Section 406.032 of the TWCA provides that
an insurance carrier is relieved from liability if an employee is injured by a
third party for a Apersonal reason@; as Lumbermens
correctly states, the language of the statute does not require Apersonal animosity@ to exist between
the injured party and the assailant. 
Nonetheless, according to the supreme court in Nasser, the
personal animosity exception does not apply unless the injury Aresult[ed] from a
dispute that has been transported into the place of employment from the injured
employee=s private or
domestic life.@ 
724 S.W.2d at 19.  Similarly, in
our opinion on remand, we emphasized the causal connection between the employee=s injuries and his
duties, notwithstanding that there may be some personal motivation for the
assault.  755 S.W.2d at 192.








Accordingly, we conclude that there is
more than a scintilla of evidence to support the jury=s implied finding
that Green=s death was not the result of a dispute
that was transported from his private life into his place of employment.  Although Novak surmised that the assailant
attacked Green in order to steal the money he reputedly carried, there is no
evidence that Green and the unknown assailant had interacted with each other
prior to the attack.   Rather, the
conflict arose in the workplace and was arguably incidental to an inferred duty
of Green=s employment:
investigating why the light was turned off. 
Thus, under Nasser and other relevant case law, there is more
than a scintilla of evidence to support the jury=s finding that
Green=s death occurred
in the course and scope of his employment. 
See Bomar, 9 S.W.3d at 806 (holding that in motion for summary
judgment in a negligence suit, defendant hospital established as a matter of
law that plaintiff nurses= injuries did not fall within the personal
animosity exception because sexual harassment by doctor occurred only at the
hospital and the conflict was not transported into the workplace from their
private lives); Urdiales v. Concord Technologies Del., Inc., 120 S.W.3d
400, 405 (Tex. App.CHouston [14th Dist.] 2003, no pet.)
(holding in summary judgment case that personal animosity exception did not
apply when supervisor punched employee who had returned late from lunch because
nothing in the record indicated that the supervisor assaulted the employee Abecause of an
event or a relationship outside of work@).  But see Liberty Mut. Ins. Co. v. Upton,
492 S.W.2d 623, 625  (Tex. App.CFort Worth 1973,
no pet.) (applying the personal animosity exception and reversing award of
death benefits to children of deceased employee who was shot at work by
ex-husband because the shooting occurred for reasons personal to the employee
and the ex-husband).

Additionally, after considering and
weighing all of the evidence, we find it to be factually sufficient.  Although Cavelli testified that many people
knew that Green carried large sums of cash in his money clip, Gorjon testified
that he had worked with Green for many years and had never seen a money
clip.  As the trier of fact, the jury is
the sole judge of witnesses= credibility and
the weight to be given to their testimony; as the reviewing court, we cannot
second-guess the jury=s decisions on such matters.  Pacheco, 154 S.W.3d at 829.  Similarly, Novak opined that the attacker=s failure to
pursue Gorjon or steal items from the warehouse indicated that stealing Green=s money clearly
was the assailant=s objective; however, the jury was free to
draw other reasonable inferences from these facts.  Walters, 654 S.W.2d at 426.  Accordingly, we hold that Lumbermens has
failed to demonstrate that the jury=s adverse finding
is so against the great weight and preponderance of the evidence that it is
clearly unjust.  Because we find the
evidence to be legally and factually sufficient to support the award of death
benefits to appellee, we overrule both of appellant=s points of error
and affirm the judgment of the trial court.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment
rendered and Memorandum Opinion filed February 28, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.











[1]  The presiding
officer at the initial hearing determined that Robert Green=s death was the result of a compensable injury
sustained in the course and scope of his employment.  Lumbermens appealed, and the Texas Workers= Compensation Commission Appeals Panel No. 67
affirmed.  Plaintiff Lumbermens then
brought the issue before the 164th District Court, and defendant Brenda Green
requested a jury trial.  The jury found
that Green=s death was the result of a compensable injury
sustained in the course and scope of his employment, and the trial court
entered judgment accordingly.  Lumbermens
now brings this appeal.





[2]  Gorjon
testified that he injured his knee, mouth, tooth, and hand when he fell and
that he received worker=s compensation for his injuries.





[3]  In Nasser,
there was also evidence that Daryoush was mentally ill and that his ability to
form a  rational intent was at
issue.  755 S.W.2d at 192.  In its factually sufficiency review, we
discussed the jury=s implied finding that Daryoush was incapable of
forming a rational intent and noted that such a finding precludes the
applicability of the personal animosity exception.  Id. 
However, before delving into this analysis, we explicitly noted that Aour finding of sufficient evidence to support the
causative-factor standard makes the . . . element concerning rational intent
moot in this case.@  Id.