Affirmed and Memorandum Opinion filed August 29, 2006








Affirmed and Memorandum Opinion filed August 29, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00010-CV

____________

 

CHRISTOPHER M. MILES, INDIVIDUALLY
AND AS SUCCESSOR INDEPENDENT EXECUTOR OF THE ESTATE OF JACQUELYN PATTEN MILES,
DECEASED; SHANNON MILES MCCOY; ANDRE MCCOY AS GUARDIAN OF SHANNON MILES MCCOY,
AN INCAPACITATED PERSON; AND JESSIE L. PATTEN KEY, Appellants

 

V.

 

MICHAEL D. CARAWAY, M.D. AND
MEMORIAL SOUTHWEST EMERGENCY PHYSICIANS, L.L.P., Appellees

 



 

On Appeal from the Probate
Court at Law Number Two

Harris County, Texas

Trial Court Cause No. 338,742-401

 



 

M E M O R A N D U M   O P I N I O N








In this medical malpractice case, appellants challenge a
take-nothing judgment entered after a jury determined that defendant Dr.
Michael Caraway did not negligently cause the death of his patient, Jacquelyn
Patten Miles.  In two issues, appellants challenge the factual sufficiency of
the evidence to support this finding and the trial court=s refusal to grant
a new trial.  We conclude the evidence is sufficient to support the jury=s verdict, and
therefore affirm the trial court=s judgment.

                        I.  Factual and Procedural Background

Jacquelyn Miles arrived at the emergency room of Memorial
Hermann Southwest Hospital at 1:45 a.m. on February 24, 2003 primarily
complaining of abdominal pain.  She was seen by Dr. Caraway at 3:50 a.m.  Dr.
Caraway reviewed Miles=s history, conducted a physical
examination, and ordered blood work, an EKG, and a chest x-ray.  Although the
tests revealed some abnormalities, Dr. Caraway testified that the test results
were consistent with Miles=s age, her history of hypertension, and
her use of hypertension medication.  Dr. Caraway noted Ano acute changes@ in his report and
did not order any additional tests.  He diagnosed Miles as having Aacute abdominal
pain@ and gave her a
small dose of Demerol.

When Dr. Caraway met with Miles at 8:00 a.m., she was
ambulatory, drinking fluids, her pain had resolved, and her blood pressure was
normal.  She told Dr.  Caraway and a nurse that she would like to go home and
sleep in her own bed.  Dr. Caraway prescribed additional pain medication, asked
Miles to return to the hospital if her condition worsened in any way, and
discharged her from the hospital at 8:15 a.m.

At 2:48 p.m., a member of Miles=s family called
911 after finding Miles=s condition had deteriorated.  When Miles
arrived at the hospital for the second time, she was no longer responsive, and
her blood pressure had become unstable.  Tests showed that Miles had blood in
her pericardium, which is the sac around the heart.  Miles was accordingly
diagnosed with a thoracic aortic dissection.  She was life-flighted to another
facility for emergency surgery, but pronounced dead after the failure of
cardiopulmonary resuscitation shortly following her arrival.








Appellants filed suit against Dr. Caraway, claiming he was
negligent in failing to diagnose the aortic dissection and sending Miles home,
and that this negligence proximately caused Miles=s death.  The case
was tried to a jury.  In response to the broad form question of whether Athe negligence, if
any, of Michael D. Caraway, M.D. proximately cause[d] the occurrence in
question,@ the jury answered ANo.@  The court
entered a take nothing judgment, and appellants moved for a new trial on
factual sufficiency grounds.  The court denied appellants= motion for a new
trial, and this appeal ensued.

II.  Issues Presented  

Appellants assert two issues on appeal: (1) whether
the evidence is factually sufficient to support the jury=s verdict, and (2)
whether the trial court abused its discretion in refusing to grant a new trial.

                                         III. 
Standard of Review

To attack the factual sufficiency of an adverse finding on
an issue for which a party has the burden of proof, the party must show that
the adverse finding is against the great weight and preponderance of the
evidence.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241B42 (Tex. 2001)
(explaining standards as they apply to review of findings on adverse issues
upon which the party has the burden of proof).  When reviewing a factual
sufficiency challenge, we must consider and weigh all of the evidence in the
record.  Id.   We may set aside a verdict only if the evidence is so
weak or if the finding is so against the great weight and preponderance of the
evidence that it is clearly wrong and unjust.  See id.; see also Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986).  It is fundamental that
in conducting this review Aan appellate court cannot merely
substitute its judgment for that of a jury, because the court cannot exercise
its constitutional authority to the detriment of the right of trial by jury,
which is of equal constitutional stature.@  Cropper v.
Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1998).

IV.  Analysis








Appellants contend that the jury=s finding must be
overturned because the overwhelming weight of the evidence established that Dr.
Caraway was negligent in sending Miles home instead of keeping her in the
hospital for further testing and diagnosis of her condition.  Appellants= argument is
centered around testimony elicited from both Dr. Caraway and his expert
Dr. Zimmerman during cross-examination.  Specifically, appellants contend
that Dr. Caraway and Dr. Zimmerman admitted Dr. Caraway=s negligence, and
therefore a finding of negligence was the only conclusion the jury could have
reached.  Having reviewed the evidence in the record, we disagree.  

During
cross-examination, Dr. Zimmerman testified as follows:

Q:        If [Dr. Caraway] looked at this [x-ray] film and said to
himself, >I cannot rule out an aneurysmal dilatation,= in order to be reasonable and
prudent, you would either: (1) have a radiologist look at the film;
(2) have someone else look at the film; or (3) order some other kind of
other study, correct?

A:      That=s correct.

Q:      Right here we know it says that aneurysmal
dilatation is not excluded.  And [Dr. Caraway] testified in his deposition that
he saw exactly what the radiologist put in his report, but [Dr. Caraway] didn=t ask someone else to review the
x-ray for him, did he?

A:      No.

Q:      [Dr. Caraway] didn=t order another x-ray to repeat it,
did he?

A:      No.

Q:      And [Dr. Caraway] did not order any other
study, did he?

A:      Not that I=m aware of, no.

Because
Dr. Caraway admitted on cross-examination that he did not have a radiologist or
other expert look at Miles=s x-rays, and he did not order additional
tests, appellants argue that Drs. Caraway and Zimmerman agree that Dr. Caraway
breached the standard of care, and therefore, the evidence must be factually
insufficient to support the jury=s verdict.  








At the outset, we do not accept the premise that the
testimony of Drs. Zimmerman and Caraway amounts to an admission of negligence
and renders the evidence factually insufficient.  A review of the testimony at
trial, taken in context, demonstrates that neither Dr. Caraway nor Dr.
Zimmerman conceded that Dr. Caraway had been negligent.  To the contrary, both
doctors explained why Dr. Caraway had not been negligent in the treatment of
Ms. Miles.  The testimony introduced at trial established that emergency care
focuses on Aproblem oriented treatment.@  Miles presented
with a chief complaint of mild abdominal pain, which is not consistent with the
classic presentation of a thoracic aortic dissection.  Dr. Caraway=s physical
examination of Miles did not reveal problems that were characteristic of a
thoracic aortic dissection, but demonstrated abdominal tenderness which she
rated as only two or three on a scale of one to ten.[1] 
Miles responded to pain medication, and improved after her admission to the
emergency room.  Based on the Aentire clinical picture@  Miles presented
in the emergency room, both Dr. Zimmerman and Dr. Caraway testified that
further testing to rule an aortic dissection was not indicated.  Both Dr.
Caraway and Dr. Zimmerman testified that Dr. Caraway met the  standard of care
applicable to emergency medicine physicians. 








We also must reject appellants= argument for a
second reason.  At trial, appellants bore the burden to establish (1) the
standard of care applicable to Dr. Caraway; (2) his breach of that standard;
(3) injury; and (4) a reasonably close causal connection between the breach of
the standard and the injury suffered by Miles.  See Wheeler v. Yettie
Kersting Mem=l Hosp., 866 S.W.2d 32,
37 (Tex. App.CHouston [1st Dist.] 1993, no writ) (describing
elements of a medical negligence claim).  Because expert testimony is required
to establish the elements of medical negligence,[2]
this case is essentially a Abattle of the experts.@  In a battle of
competing expert testimony, it is the sole prerogative of the jury to determine
the weight and credibility of the witnesses.  See Magee v. Ulery, 993
S.W.2d 332, 336 (Tex. App.CHouston [14th Dist.] 1999, no pet.)
(holding the failure to find a physician negligent was not against the
overwhelming weight of the evidence where the jury could have believed the
defense expert that diagnosis was erroneous but not negligent); Cruz ex rel.
Cruz v. Paso Del Norte Health Found., 44 S.W.3d 622, 646 (Tex. App.CEl Paso 2001, pet.
denied) (holding that the failure to find a nurse negligent was not against the
overwhelming weight of the evidence where opinions of experts for both parties
conflicted). 

At trial, the experts offered conflicting opinions on the
applicable standard of care and causation.  Thus, the jury was authorized to
find the testimony indicating negligence less credible than the testimony
supporting Dr. Caraway.[3] 
See Winkle v. Tullos,  917 S.W.2d 304, 318 (Tex. App.CHouston [14th
Dist.] 1995, writ denied) (holding that the jury=s failure to find
negligence was supported by legally and factually sufficient evidence because conflicting expert
testimony was offered on the use of a tourniquet during knee surgery).  As the trier of
fact, the jury is the sole judge of the credibility of the witnesses and the
weight to be given to their testimony.  Banner Life Ins. Co. v. Pacheco,
154 S.W.3d 822, 829B30 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  The jury may choose to believe one witness and
disbelieve another and resolve any inconsistencies in the testimony.   Eberle
v. Adams, 73 S.W.3d 322, 327 (Tex. App.CHouston [1st Dist.]
2001, pet. denied).   Because there is evidence in the record to support the
jury=s determination
that Dr. Caraway was not negligent, the verdict is not against the great weight
and preponderance of the evidence.  See Pacheco, 154 S.w.3d at 829B30 (Awe may not
substitute our own judgment for that of the trier of fact, even if we would
reach a different answer on the evidence.@). 








Finally, we are unpersuaded by appellants= argument because
it is logically flawed. Even if we agreed with appellants that Dr. Caraway
essentially admitted breaching the standard of care, the jury still could have
found that the breach did not proximately cause Miles=s death. 
Significantly, no witness testified that Dr. Caraway should have been aware of
the need for emergency surgery based on his examination of the patient, her
history, her test results, or her complaints.  No witness testified Dr. Caraway
breached the standard of care by failing to order emergency surgery; rather,
appellants= witnesses testified that Dr. Caraway was required to
perform additional actions that, appellants imply, would in turn have indicated
the need for surgery.  But, appellants offered no evidence that if Dr. Caraway
had obtained a second interpretation of the x-ray from a radiologist or Asomeone else,@ or had ordered Asome other kind of
other study,@ he would have discovered that Miles had an aortic
dissection requiring emergency surgery.  In fact, the x-ray was reviewed by a
radiologist after Miles=s death, and the radiologist=s report did not
indicate that Miles had an aortic dissection or required emergency surgery; to
the contrary, the radiologist=s report was consistent with  Dr. Caraway=s interpretation
of the x-ray.  Although appellant also offered the testimony of Drs. Fromm and
Bhatia that a reasonable emergency medicine physician would have ordered a CT
scan on the morning of February 24 based on Miles=s complaints,
x-ray, and test results, neither doctor testified that a CT scan would have
revealed the aortic dissection or the need for surgery.  Moreover, Dr. Bhatia
admitted that one can only speculate regarding what the CT scan would have
shown at that time.  Thus, even if the jury found that Dr. Caraway breached the
standard of care, the jury was also entitled to find that Dr. Caraway=s negligence, if
any, did not proximately cause Miles=s death.[4]

 We accordingly overrule appellants= first issue.








In their second issue, appellants claim that the trial
court abused its discretion in denying their motion for a new trial.  The trial
court=s denial of a
motion for new trial will not be disturbed on appeal absent an abuse of
discretion.  Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex.1984).  Here,
we have held that the evidence is factually sufficient to support the verdict. 
Accordingly, the trial court did not abuse its discretion in denying the motion
for new trial.  See, e.g., In re D.J., 100 S.W.3d 658, 668 (Tex. App.CDallas 2003, pet.
denied) (denying motion for new trial on basis of factual sufficiency).

                                                IV.  Conclusion

We hold the
evidence is factually sufficient to support the jury=s findings.  We
further hold the trial court did not abuse its discretion in denying appellants= motion for new
trial.  Therefore, we affirm the trial court=s judgment.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment affirmed
and Memorandum Opinion filed August 29, 2006.

Panel consists of
Justices Yates, Guzman, and Murphy.[5]









[1]  The evidence at trial included testimony that the
classic symptoms of aortic dissection include intense chest pains rather than
mild abdominal pain.





[2]  See Am. Transitional Care Ctrs of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 876 (Tex. 2001).





[3]  Dr. Caraway testified that Miles=s test results were consistent with Miles=s age, medical history, and medication; Dr. Caraway=s expert, Dr. Zimmerman, agreed that Miles=s x-ray results were Anot unexpected@ in someone with long-standing hypertension.  Dr.
Zimmerman further testified that Miles=s
pain was not consistent with aortic dissection.  Appellants= expert Dr. Fromm testified that a reasonable
emergency medicine physician would have admitted Miles to a cardiac or
intensive care unit based on her complaints of epigastric pain and her abnormal
EKG results, but did not contradict Dr. Caraway=s testimony that the test results were explained by Miles=s known hypertension and medication.  Appellants= experts Drs. Fromm and Bhatia testified that Dr.
Caraway should have ordered a CT scan, but neither testified that the scan
would have shown that Miles had an aortic dissection.





[4]  Appellants argue that Chumley v. Barhorst,
No. 01-03-01342-CV, 2005 WL 856887 (Tex. App.CHouston [1st Dist.] April 14, 2005, no pet.) (mem. op.) is directly on
point and dictates reversal in this case.  Chumley sued Barhorst for
negligently driving through an intersection against the light and colliding
with Chumley=s vehicle.  Barhorst was in the midst of a seizure at
the time of the accident, and admitted that, given his history of seizures, it
was foreseeable that he might have a seizure while driving.  Moreover, when
asked if he knew Abeyond any doubt@
that the crash was his fault and Ano
one else=s fault@
but his, Barhorst agreed.  Id. at *4.  Here, neither Dr. Caraway nor Dr.
Zimmerman testified that it was or should have been foreseeable to Dr. Caraway
that Miles would die without emergency surgery, and neither testified that
Miles=s death was Dr. Caraway=s fault.





[5]  Senior Chief Justice Paul C. Murphy sitting by
assignment.